UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSTAM KHUSIKHANOV,<br><br>                                Petitioner,<br><br>v.<br><br>CHRISTOOPHER J. LAROSE,<br><br>                                Respondent. | Case No.:  26cv3062-LL-SBC<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

Before the Court is Petitioner Rustam Khusikhanov's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Response [ECF No. 4, ("Ret.")] and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS IN PART** the Petition for Writ of Habeas Corpus and **ORDERS** an immediate release.

**I.      BACKGROUND**

Petitioner is a citizen of Russia. Pet. ¶ 1. Petitioner entered the United States on or about January 5, 2023 and was detained. *Id*. On or about February 12, 2023, Petitioner was

released from custody on parole. *Id*. Subsequently, Petitioner applied for asylum and his master hearing is set for May 27, 2026. *Id*. ¶¶ 2, 9.

On or about April 20, 2026, Petitioner was detained by the U.S. Immigration and Customs Enforcement ("ICE") at or near San Clemente San Diego military base. *Id*. ¶ 4. Petitioner claims that ICE revoked Petitioner's parole without proper notice or an opportunity to be heard (*id*. ¶¶ 5, 6), and Respondent does not dispute this claim.

On May 15, 2026, Petitioner filed the instant Petition alleging DHS violated the Fifth Amendment's Due Process Clause, Immigration and Nationality Act ("INA"), and the Administrative Procedures Act ("APA"). Pet. ¶¶ 51–75.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)).

## III.   DISCUSSION

Petitioner argues that the summary revocation of his parole without notice or a hearing violate the Fifth Amendment's Due Process Clause, the INA, and the APA. Pet. ¶¶ 51–75. In their three-page response, Respondents do not address Petitioner's claims at all and merely state that "[i]t is the government's position that Petitioner is subject to mandatory detention under § 1225(b)(2)." Ret. at 2. Because the Court finds that

Petitioner's Fifth Amendment claim is meritorious and justifies Petitioner's release, the Court will only address this claim in this Order.[1]

First, the Court disagrees with Respondent and finds that Petitioner is wrongfully detained under section 1225(b). As a noncitizen who, at the time of his detention, had been at liberty in the United States for over three years, Petitioner was and is subject to section 1226(a), which states that a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). By contrast, section 1225(b) applies to noncitizens arriving at the border or who very recently entered the United States. *See Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *4–7 (S.D. Cal. Nov. 4, 2025). As the Supreme Court explained, the government may "detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2)," while § 1226(a) allows the government to "detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). The Court adopts its reasoning stated in *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *4–7 (S.D. Cal. Nov. 4, 2025) and finds the appropriate remedy is a bond hearing pursuant to 8 U.S.C. § 1226(a).

Nevertheless, the Court finds that immediate release, rather than a bond hearing, is the appropriate remedy for this case. Having been previously released on parole, Petitioner has a protected liberty interest in remaining free from detention. The Fifth Amendment

---

[1] Because the Petition can be resolved on due process grounds, the Court declines to reach Petitioner's claims of APA violation. However, the Court notes that other courts have found violations of the APA in similar circumstances. *See, e.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1156 (S.D. Cal. 2025) ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

26cv3062-LL-SBC

guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

"Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, Petitioner alleges that he was detained without any notice as to why his parole was revoked. Pet. ¶¶ 5, 6. For over three years after being released, Petitioner lived in the community and pursued immigration relief. *Id*. ¶ 2. In contrast, Respondents have not shown that Petitioner violated the conditions of his release or explain why his parole was revoked that would justify his renewed detention. *See generally* Ret.

26cv3062-LL-SBC

The Court finds that all three factors support a finding that the revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without providing him a reason for the revocation or giving him an opportunity to be heard. After the initial determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, Respondents have not produced any argument or evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no indication that Petitioner has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

5

26cv3062-LL-SBC

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO (HC), 2025 WL 2817795, at *6 (E.D. Cal. Oct. 3, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025))).

Therefore, because Respondents detained Petitioner by revoking his release without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez*, 2025 WL 2770629, at *4 (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting parole. *See Noori*, 807 F. Supp. 3d at 1163–66 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS IN PART** Petitioner's Petition.[2]

/ / /

---

[2] In his prayer for relief, Petitioner requests attorney's fees and costs under the Equal Access to Justice Act, which the Court **DENIES WITHOUT PREJUDICE**. Pet. at 16.

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus and **ORDERS** that Respondents to immediately release Petitioner from custody within 48 hours subject only to the conditions of his preexisting parole. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  May 28, 2026

_____

Honorable Linda Lopez
United States District Judge

26cv3062-LL-SBC